UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| TAMMY R. LAMB, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 11-228-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Tammy R. Lamb ("Lamb" or "the Claimant") and Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner"). [Record Nos. 9, 10] Lamb argues that the administrative law judge assigned to his case erred "when he ignored the opinions of [Lamb's] treating physicians that she suffers from fibromyalgia" [Record No. 9-1, p. 7] and "when he disregarded the opinions of [Lamb's] treating psychiatrist that [she] suffers from mental illness." [*Id.*, p. 9] The Commissioner, however, contends that the record contains substantial evidence in support of the decision denying benefits to Lamb, and that the decision should be affirmed. For the reasons discussed below, the Court finds that remand for further proceedings is necessary. Therefore, the Court will grant partial relief to Lamb and deny the Commissioner's motion.

-1-

# I.

Lamb filed an application for a period of disability and disability insurance benefits under the Social Security Act on May 23, 2007. [Tr., p. 11] She alleged disability beginning April 1, 2007. [*Id.*] These claims were denied initially on July 30, 2007, and upon reconsideration on December 6, 2007. [Tr., pp. 104-07, 111] Lamb, along with her representative Randy Dinsmore and vocational expert Joyce P. Forrest, appeared before Administrative Law Judge ("ALJ") Don C. Paris on December 18, 2009, in Lexington, Kentucky. [Tr., p. 51]

Lamb was forty-two years old at the time of the administrative hearing. She completed the twelfth grade, and previously worked as a finisher at a weaving company. [Tr., pp. 149, 154] Lamb alleges that she is disabled due to chronic fatigue syndrome, mononucleosis, fibromyalgia, depression, memory problems, pain, weakness, sleep problems, concentration problems, headaches, heart palpitations, loss of energy, and anxiety. [Tr., p. 148] After reviewing the record and testimony submitted during the administrative hearing, the ALJ concluded that Lamb suffered from the following severe impairments: major depressive disorder; panic disorder with agoraphobia; obsessive compulsive disorder; and mental overlay of fibromyalgia and chronic fatigue syndrome secondary to mental impairments. [Tr., p. 13] Notwithstanding these impairments, the ALJ found that Lamb has the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). [Tr., p. 16] Specifically, ALJ Paris found that Lamb had the RFC to

> occasionally lift and/or carry 20 pounds, frequently 10 pounds; stand and/or walk a total of 6 hours each in an 8 hour day; sit 6 hours in an 8 hour day; and no non-exertional physical limitations. The claimant also suffers from mental impairments and would be limited to perform[ing] only simple, repetitive work

activities in a low stress, object focused work environment in which contact with co-workers and supervisors would be casual and infrequent in a non-public work setting in which changes in work activities would be routine and gradual.

[*Id.*] As a result of this assessment, ALJ Paris found that Lamb was not disabled and denied her a period of disability and disability insurance benefits.  [Tr., p. 21]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that she is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. § 404.1520(b).  Second, the claimant must show that she suffers from a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience.  20 C.F.R. § 404.1520(d).  Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the

-3-

claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether she can perform her past work.  If she can, she is not disabled.  20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work.  If she cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 784 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the proper legal standards were applied and whether the ALJ's findings are supported by substantial evidence.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).  Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence.  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir.

2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).

### III.

Lamb argues that the ALJ erred in discounting the opinions of her treating physicians that she suffers from fibromyalgia.  [Record. No. 9-1, p. 7] Additionally, she asserts that the ALJ erroneously disregarded her treating physician's opinion that she suffers from mental illness. [*Id.*, p. 9]  The Commissioner contends that ALJ Paris properly evaluated the medical evidence of record according to the correct legal standard, and that substantial evidence supports the decision.

### A.    The Treating Physician Rule

A treating source's medical opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's record.   20 C.F.R. §§ 404.1527(c)(2); *see also Walker v. Sec'y of H.H.S.*, 980 F.2d 1066, 1070 (6th Cir. 1992).  If the treating source's opinion is not entitled to controlling weight, this does not necessarily mean that the opinion should be completely rejected.  Rather, the ALJ must determine what weight to give the opinion by considering the following factors:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with regard to the record as a

whole; (5) whether the treating source is a specialist in the area of his or her opinion; and (6) any other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(2)-(6).  The ALJ must always give "good reasons" for accepting or rejecting a medical opinion.  20 C.F.R. § 404.1527(c)(2).

The regulations define "medical opinions" as statements from physicians or other acceptable medical sources that "reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical and mental restrictions."  20 C.F.R. § 404.1527(a)(2).  Notwithstanding the deference to be given to the medical opinion of the treating physician, the ultimate decision on disability rests with the ALJ.  *Walker*, 980 F.2d at 1070.  Moreover, the regulations provide that a physician's opinion regarding whether a claimant is disabled or unable to work will be given no "special significance."  20 C.F.R. § 404.1527(d)(3).

### 1.      Fibromyalgia

Lamb argues that the ALJ erred by "ignor[ing] the opinions" of her treating physicians concerning her fibromyalgia diagnosis.  The Claimant sought treatment for fibromyalgia in 2005 from her treating physician Dr. Strauss. [Tr., pp. 257-62]  Another treating physician, Dr. Staley, diagnosed Lamb with fibromyalgia in 2007.  [Tr., p. 340]  Lamb asserts that the diagnosis of fibromyalgia from each treating physician was ignored by the ALJ.

### i.      Dr. Strauss

Lamb first asserts that the ALJ erred by ignoring the opinion of her treating physician, Dr. Strauss.  The Court agrees. As a treating physician, Dr. Strauss's opinion was entitled to

consideration and deference.  20 C.F.R. § 404.1527(c)(2).  If complete deference was not given, the ALJ was required to clearly elaborate regarding the weight given to the opinion and the reason for this decision.  *Id.*  The "clear elaboration requirement [is] imposed explicitly by the regulations."  *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008).  As Social Security Ruling 96-2p explains:

> The notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  The dual purpose of this requirement is to help claimants understand the disposition of their cases and to "ensure that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."  *Wilson*, 378 F.3d at 544-45 (citations omitted).  Failure to abide by this requirement can result in the matter being remanded.  *Id.* at 545; *see also Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight  given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ[s] that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.").

In the present case, ALJ Paris's sole mention of Dr. Strauss was to say that Lamb "has been treated in the past" by him.  [Tr., p. 17]  In his opinion, Dr. Strauss notes that Lamb had some loss of range of motion in her joints, impaired attention and concentration, muscle

-7-

tenderness, and decreased strength.  [Tr., pp. 276, 280, 397, 399, 400-1, 403]  The ALJ never explained what weight, if any, he gave to Dr. Strauss's opinion, and did not state the reasons for any weight given.  The Commissioner argues that ALJ Paris accounted for Lamb's chronic fatigue syndrome and fibromyalgia by limiting her to light work.[1]  [Tr., p. 16]  However, even if the ALJ's findings are consistent with Dr. Strauss's opinion, as the Commissioner contends, the ALJ is required to show that he considered Dr. Strauss's opinion, describe the weight given to the opinion, and explain  the reasons for the weight given.  *Wilson*, 378 F.3d at 544.  These requirements were not met.  Therefore, the case will be remanded for consideration of Dr. Strauss's opinion and a clear  elaboration of what weight it was given by the ALJ.

### ii.       Dr. Staley

Lamb next argues that the ALJ erred by disregarding the opinion of Dr. Staley.  The ALJ stated that he "granted little weight" to the June 2008 and March 2009 statements of Dr. Staley.  Because he discounted the opinion of a treating physician, the ALJ was required to state good reasons for this decision.  *See Walker,* 980 F.2d at 1070.  The statements in question include Dr. Staley's June 2008 letter,  where she indicates that Lamb is unable to sit, stand or walk for more than twenty minutes at a time, and is unable to lift and carry above 5-10 pounds.  [Tr., p. 340]  In her March 2009 letter, Dr. Staley states that it would be "impossible" for Lamb to work "at any job."  [Tr., p. 340]

---

[1]The ALJ stated that "the claimant's pain and fatigue associated with fibromyalgia would limit her capacities for sitting, standing, walking, lifting, and carrying, and thus, the undersigned find the claimant could not tolerate these activities beyond the light level of exertion."  [Tr., p. 18]

The Court concludes that the ALJ adequately considered Dr. Staley's 2008 opinions and stated good reasons for granting them little weight in accordance with 20 C.F.R. §§ 404.1527(c)(2)-(6).  The ALJ found Dr. Staley's letter to be "inconsistent with the nature of the claimant's treatment as well as the remaining record inclusive of her own treatment notes which do not include signs or findings consistent with such extreme limitations."[2]  [Tr., p. 19] The ALJ thus considered Dr. Staley's 2008 opinion, clearly stated the weight he gave it, and gave good reasons for assigning it that weight.

Further, Dr. Staley's 2009 letter constitutes an opinion regarding whether Lamb is able to work.  Opinions on a claimant's ability to work are not medical opinions; instead, they are "opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. § 404.1527(d).  Thus, the 2009 statement by Dr. Staley was not entitled to any special significance.  *See* 20 C.F.R. § 404.1527(d)(3).  The ALJ's decision to give little weight to Dr. Staley's statements was supported by substantial evidence and was fully explained in his decision, even if there is some evidence that would have supported an alternate finding.  [Tr., pp. 16-18]; *see Buxton*, 246 F.3d at 772.

## 2.    Mental Health

Lamb also argues that the ALJ erred in disregarding the opinions of her treating psychiatrist, Dr. Elliott, and the consultative psychologist, Dr. Sprague. [Record No. 9-1, p. 9]

---

[2]Despite the fibromyalgia diagnosis, Dr. Staley apparently placed no physical limitations on Lamb.  [Tr., pp. 376, 386]  Indeed, Lamb continued to function normally, according to her own testimony regarding her day-to-day activities.  [Tr., p. 15]  The sole limitation in Dr. Staley's treatment notes is dated March 10, 2009, where Dr. Staley states "[Lamb] has chronic pain and needs to rest/recline several times daily as a treatment."  [Tr., p. 498]

The ALJ states that he "granted some weight to the assessments of Dr. Hammock, Dr. Eardley, and Dr. Sprague" and granted "little weight" to the opinion of Dr. Elliott.  [Tr., p. 18]  Dr. Sprague's assessment, insofar as it conflicted with the RFC determination, was rejected as "inconsistent with the objective evidence as well as the reported/admitted activities of the claimant."  [*Id.*]  Lamb argues that the ALJ offered "no rational basis for disregarding the opinions of [her] treating physicians, as well as a consultative psychologist."  [Record No. 9-1, p. 9]  The Commissioner asserts that the ALJ properly considered the medical opinions of these doctors and that ALJ Paris provided good reasons for not granting them controlling weight [Record No. 10, p. 7]  The Court finds that the ALJ did not err in granting little weight to Dr. Elliott's medical opinion and some weight to Dr. Sprague's opinion, and that the ALJ provided good reasons for his determinations.

### i.    Dr. Elliott

The ALJ considered and "granted little weight" to the March 2009 and November 2009 medical source statements completed by Dr. Elliott.  [Tr., p. 19]  In March 2009, Dr. Elliott stated that Lamb was seriously limited in her ability to follow work rules and use judgment and was unable to function in the following areas:  relating to co-workers; dealing with the public; interacting with supervisors; dealing with work stress; functioning independently; maintaining attention and concentration; and maintaining emotional stability.  [Tr., p. 378]  In November 2009, Dr. Elliott averred that Lamb had moderate limitations in her ability to understand, remember, and carry out simple instructions and to make simple work-related judgments.  [Tr., pp. 489-90]  He found marked limitations in Lamb's ability to understand, remember, and carry

out complex instructions; to make complex work-related judgments; to interact appropriately with the public, supervisors, and coworkers; and to respond appropriately to work situations and changes in the routine work setting. [*Id.*] The ALJ considered these findings inconsistent with Lamb's level of treatment and reported functioning.[3]

ALJ Paris sufficiently explained his reasons for granting Dr. Elliott's opinion little weight. In his decision, the ALJ states that

> treatment notes from psychiatrist Robert Elliott, M.D., indicate that the claimant was initially seen for twenty minute intervals about every month beginning in July 2008[;] however[,] records indicate the frequency of appointments dwindled to every two months after just four months of treatment and most recently (October 2009) the claimant was advised to return in six months after Dr. Elliott noted the claimant's condition was stable on her current therapy.

[Tr., p. 17] This explanation includes a consideration of the length of treatment and the frequency of examination, as well as the nature and extent of the relationship between Dr. Elliott and Lamb. *See* 20 C.F.R. §§ 404.1527(c)(2)(i), (ii).

Additionally, Dr. Elliott's assessment in July 2008 indicated only moderate symptoms or moderate difficulty in social, occupational, or school functioning. [Tr., p. 18] The ALJ noted that Lamb did not seek formal mental health treatment until July 2008, which was well after her application for disability benefits. [Tr., p. 18] The ALJ compared Dr. Elliott's opinion with findings from consultative opinions by Dr. Eardley and Dr. Sprague, and found it inconsistent with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(4).

---

[3]Dr. Elliott's treatment notes show that, despite her self-reported depression and anxiety, Lamb was oriented and her speech was clear, articulate, and goal-directed. [Tr., pp. 282-86, 388-92, 493] For example, in October 2009, Dr. Elliott found that Lamb was oriented; her immediate, recent and remote memory were all intact; her attention and concentration were unimpaired; her insight was good; and her judgment was appropriate. [Tr., p. 494]

ALJ Paris also compared Dr. Elliott's opinion with testimony from Lamb herself, specifically noting that Lamb was able to appropriately interact with others, including her children, parents, father-in-law, and other family members. [Tr., pp. 15, 87-88] She uses a cell phone and a computer. [Tr., pp. 15, 90, 92, 95, 96] The ALJ observed that Lamb was able to interact with him and with her representative at the administrative hearing without problems. [Tr., p. 15] Lamb cooks, cleans, shops, and takes care of her pets. [*Id.*] She attends church, watches television, reads, drives and sews, and the ALJ noted that these activities require significant attention and the ability to concentrate. [*Id.*] The ALJ found this inconsistent with Dr. Elliott's March 2009 and November 2009 opinions, and thus he granted Dr. Elliott's opinions little weight. Based on this thorough discussion, the Court finds that ALJ Paris sufficiently explained his reasons for granting Dr. Elliott's opinion little weight, and explained them according to the factors listed in 20 C.F.R.§§ 404.1527(c)(2)-(6).

## ii.    Dr. Sprague

Lamb also alleges error with the ALJ's consideration of Dr. Sprague's medical opinions. The ALJ granted Dr. Sprague's opinions some weight "to the extent they are consistent with the residual functional capacity determined." [Tr., p. 18] The ALJ rejected "the further findings of any moderate to marked limitations by Dr. Sprague as inconsistent with the objective evidence as well as the reported/admitted activities of the claimant." [*Id.*] Dr. Sprague examined Lamb in May 2009 to assess her emotional and mental status. [Record No. 9-1, p. 11] He opined that Lamb is markedly impaired in a number of areas, including her ability to follow complex task instructions and her ability to deal with rapid change. [Tr., p. 468] Dr. Sprague also averred that

-12-

Lamb was not impaired in her ability to follow simple directions and perform simple, repetitive activities.  [*Id*.; *see also* Record No. 10, p. 10]  This is consistent with the ALJ's RFC finding limiting Lamb to light work, which includes simple, repetitive work activities with gradual changes in work activities.  [Tr., p. 16]  Additionally, because Dr. Sprague is a consulting, rather than a treating physician, the ALJ is not required to state "good reasons" for granting more or less weight to his opinion.  The Court finds that the ALJ did not err in giving only some weight to Dr. Sprague's opinion.

## VI.

The ALJ did not err in discounting the opinions of Dr. Staley, Dr. Sprague, and  Dr. Elliott.  However, because the ALJ failed to properly evaluate the records submitted by Dr. Strauss, the Court cannot conclude that substantial evidence supports the ALJ's determination that Lamb is not disabled.  Accordingly, it is hereby

**ORDERED** as follows:

(1)    Plaintiff Tammy R. Lamb's Motion for Summary Judgment [Record No. 9] is **GRANTED,** in part, to the extent that she seeks a remand for further administrative proceedings. To the extent she seeks benefits, her motion is **DENIED;**

(2)    Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 10] is **DENIED**; and,

(3)    The decision of Administrative Law Judge Don C. Paris is **REVERSED** and the matter is **REMANDED** for further administrative proceedings consistent with this opinion.

-13-

This 7th day of August, 2012.



Signed By:

*Danny C. Reeves* DCR

**United States District Judge**